# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPE FEAR VALLEY MEDICAL CENTER<br>1638 Owen Drive<br>Fayetteville, NC 28304<br><br>　　　　Plaintiff,<br><br>v.<br><br><br>ALEX AZAR, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HEALTH AND HUMAN SERVICES<br>200 Independence Ave. S.W.<br>Washington D.C. 20201<br><br>　　　　Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. ___<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

## JURISDICTION AND VENUE

1.    This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

2.    This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1361.  Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e).

3.	This is a civil action brought to obtain judicial review of final decisionS rendered by the Provider Reimbursement Review Board ("PRRB"), acting as a component of the United States Department of Health and Human Services ("HHS"). The decisions for which judicial review is hereby sought are PRRB Case No. 14-0725, dated February 1, 2018, and PRRB Case No. 13-0269, dated February 15, 2018.

## PARTIES

4.	The following is the Plaintiff in this action:

(a)	Cape Fear Valley Medical Center, 1638 Owen Drive, Fayetteville, NC 28304.

5.	At all relevant times, Plaintiff had Medicare provider agreements with the Secretary of Health and Human Services and was eligible to participate in the Medicare program.

6.	Defendant, Alex Azar, Secretary of the Department of Health and Human Services ("Secretary"), or his predecessors in office, is the federal officer responsible for the administration of the Medicare program.  Defendant Azar is sued in his official capacity.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

7.	The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and

Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

8. The operating costs of inpatient hospital services are reimbursed by Medicare primarily through the Prospective Payment System (PPS). 42 U.S.C. §1395ww(d). The PPS statute contains a number of provisions that adjust reimbursements based on hospital-specific factors. See 42 U.S.C. §1395ww(d)(5). One such adjustment is the hospital-specific disproportionate share (DSH) adjustment, which requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

9. Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "disproportionate patient percentage (DPP)." 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the "Medicare and Medicaid fractions," for a hospital's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). Hospitals whose DSH percentages meet certain thresholds receive an adjustment which results in increased PPS payments for inpatient hospital services. 42 U.S.C. §1395ww(d)(5)(F)(ii).

10. The first fraction's numerator is the number of a hospital patient days for such period who (for such days) were entitled to both Medicare Part A and

Supplemental Security Income (SSI) benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. Id.  This case involves this first fraction, which is hereinafter referred to as the SSI fraction, or the Medicare fraction.

11.     The second fraction's numerator is the number of hospital patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the hospital's patient days for such period. Id.  The second fraction is frequently referred to as the Medicaid fraction, which is not directly at issue in this case.

12.     The SSI program is administered by the Social Security Administration (SSA); therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data. To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of hospital inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

13.     CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law

and regulations. 42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b). Although the intermediary calculates the DPP, it is CMS that computes the SSI fraction.

14. The government reimburses a substantial percentage of Medicare bad debt incurred by providers. This rule reflects the Secretary's recognition that providers' inability to collect cost-sharing amounts from beneficiaries could otherwise result in part of the cost of Medicare-covered services being borne by individuals not covered by the Medicare program. *See* 42 C.F.R. § 413.89(d); PRM § 304. The bad debt reimbursement rule is aimed at preventing such "cross-subsidization," which is prohibited by statute. *See* 42 U.S.C.§ 1395x(v)(1)(A).

15. At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803.

16. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (PRRB) or (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

## SPECIFIC FACTS PERTAINING TO THIS CASE

17.     The decisions for which judicial review is hereby sought are PRRB Case No. 14-0725, dated February 1, 2018, and PRRB Case No. 13-0269, dated February 15, 2018. These decisions ruled that the PRRB lacked jurisdiction over the provider's Medicare bad debt reimbursement claim, because the provider failed to claim Medicare bad debts on its cost report, and therefore failed to demonstrate dissatisfaction with the reimbursement determination of the Medicare contractor. The Board further dismissed the appeal of the SSI fraction on the basis that the issue was already pending in another appeal filed by the provider.

## COUNT I

18.     The allegations in Paragraphs 1-17 are incorporated as if fully set forth herein.

19.     Pursuant to 42 U.S.C. § 1395oo(a), the statutory dissatisfaction requirement applies only to a final determination of the intermediary. The statute does not require that a provider express its dissatisfaction at any time prior to the issuance of the NPR.

20.     The decisions of the PRRB were arbitrary and capricious in violation of 5 U.S.C. §706(2) by holding that the statutory dissatisfaction requirement is not met when the provider fails to claim its Medicare bad debts on its cost report.

## COUNT II

21.     The allegations in Paragraphs 1-20 are incorporated as if fully set forth herein.

22.     The provisions of 42 U.S.C. § 1395oo(d) unambiguously give the Board jurisdiction over matters that were not first presented to the fiscal intermediary.

23.     The PRRB's decisions were arbitrary and capricious in violation of 5 U.S.C. §706(2) by holding that the Board does not have jurisdiction when the provider fails to claim its Medicare bad debts on its cost report.

## COUNT III

24.     The allegations in Paragraphs 1-23 are incorporated as if fully set forth herein.

25.     The Board's interposition of a requirement to present matters first to the fiscal intermediary as a condition of jurisdiction is inconsistent with the Supreme Court's holding in *Sebelius v. Auburn Regional Medical Center*, 133 S. Ct. 817, 184 L. Ed. 2d 627 (2013).   In *Auburn*, the Supreme Court ruled that a particular limitation or restriction is presumed to be non-jurisdictional unless Congress has "*clearly stated*" that the rule is jurisdictional.

26.     The Board's assertion that its jurisdiction is dependent upon a provider first claiming its Medicare bad debts on its cost report is inconsistent with the Supreme Court's holding, because it is not stated as a condition of jurisdiction in

42 U.S.C. § 1395oo(d).  Indeed, the Secretary has explicitly recognized in its regulations effective on January 1, 2016 that any requirement to claim a particular item or service in a provider's cost report does not constitute a jurisdictional limitation. 42 C.F.R. § 405.1873**.**

27.	 The PRRB's decision was therefore arbitrary and capricious in violation of 5 U.S.C. §706(2).

## COUNT IV

28.	The allegations in Paragraphs 1-27 are incorporated as if fully set forth herein.

29.	On May 23, 2008, the Secretary issued regulations requiring that a provider has a "*right to a hearing*" only if the provider preserved the right to claim "*dissatisfaction*" by "*including a claim for specific item(s) on its cost report.*"  42 C.F.R. §405.1835(a)(1)(i).

30.	The application of these regulations to cost reports filed prior to the issuance of these regulations constitutes illegal retroactive rulemaking in violation of the Medicare Act (42 U.S.C. § 1395hh) and the APA. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

## COUNT V

31.	The allegations in Paragraphs 1-30 are incorporated as if fully set forth herein.

32. The Plaintiff claimed Medicare bad debt on its cost report. As such, the Board's denial of jurisdiction on the basis that the provider failed to claim bad debt on its cost report was arbitrary and capricious in violation of 5 U.S.C. §706(2).

## COUNT VI

33. The allegations in Paragraphs 1-32 are incorporated as if fully set forth herein.

34. The fiscal intermediary actually adjusted the bad debt claimed by the Plaintiff on its cost report. The fact that the fiscal intermediary adjusted the bad debt gave the Plaintiff the right to a hearing before the Board, without regard to whether the Plaintiff claimed such bad debt on its cost report.

35. As such, the Board's denial of jurisdiction was arbitrary and capricious in violation of 5 U.S.C. §706(2).

## COUNT VII

36. The allegations in Paragraphs 1-35 are incorporated as if fully set forth herein.

37. The Board ruled that it had the discretion to invoke its jurisdiction over the appeal. The Board further ruled that it would refuse to invoke that discretion. The Board provided no statement of reasons as to why it was refusing to exercise its discretion to invoke jurisdiction over Plaintiff's appeals. The Board's failure to provide any reasons as to why it decided not to invoke its jurisdiction over the


32. The Plaintiff claimed Medicare bad debt on its cost report. As such, the Board's denial of jurisdiction on the basis that the provider failed to claim bad debt on its cost report was arbitrary and capricious in violation of 5 U.S.C. §706(2).

## COUNT VI

33. The allegations in Paragraphs 1-32 are incorporated as if fully set forth herein.

34. The fiscal intermediary actually adjusted the bad debt claimed by the Plaintiff on its cost report. The fact that the fiscal intermediary adjusted the bad debt gave the Plaintiff the right to a hearing before the Board, without regard to whether the Plaintiff claimed such bad debt on its cost report.

35. As such, the Board's denial of jurisdiction was arbitrary and capricious in violation of 5 U.S.C. §706(2).

## COUNT VII

36. The allegations in Paragraphs 1-35 are incorporated as if fully set forth herein.

37. The Board ruled that it had the discretion to invoke its jurisdiction over the appeal. The Board further ruled that it would refuse to invoke that discretion. The Board provided no statement of reasons as to why it was refusing to exercise its discretion to invoke jurisdiction over Plaintiff's appeals. The Board's failure to provide any reasons as to why it decided not to invoke its jurisdiction over the

appeals was arbitrary and capricious, and reflected an abuse of the Board's discretion. 5 U.S.C. §706(2)(A).

## COUNT VIII

38. The allegations in Paragraphs 1-37 are incorporated as if fully set forth herein.

39. In PRRB Case No. 14-0725, the Board dismissed Issue No. 1 (DSH SSI Percentage Provider Specific) on the grounds that it was duplicative of the DSH SSI Systemic Errors pending in PRRB Case No. 13-2694G.

40. The DSH SSI Percentage Provider Specific issue is separate and distinct from the DSH SSI Systemic Errors issue.

41. The Board's ruling that the DSH SSI Percentage Provider Specific issue was duplicative of the DSH SSI Systemic Errors issue was arbitrary and capricious in violation of 5 U.S.C. §706(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

(a) For an order reversing and setting aside the decisions of the PRRB;

(b) For the costs of this suit incurred by Plaintiff, and for interest pursuant to 42 U.S.C. §1395oo(f)(2).

(e) For such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

s/ Jeffrey A. Lovitky
_____
1776 K Street, N.W., Suite 800
Washington D.C. 20036
Tel: (202) 429-3393
Fax: (202) 318-4013
Email: jefflovitky@gmail.com
ATTORNEY FOR PLAINTIFF